Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

KATRINA AND BENJAMIN NECAISE, *individually and on behalf of all those similarly situated*,

    *Plaintiffs*,

v.

GENERAL MILLS, INC., *a Delaware corporation*,

    *Defendant*.

No. **'24CV0367 TWR VET**

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Katrina and Benjamin Necaise ("Plaintiffs"), individually and on behalf of all other consumers similarly situated, by and through their undersigned counsel, hereby bring this action against General Mills, Inc. ("Defendant") alleging that the company manufactured, marketed, and distributed oat based cereal products under the brand name "Cheerios" ("Products") that contain dangerous levels of the chemical pesticide chlormequat chloride ("chlormequat"). Upon information and belief and investigation of counsel Plaintiffs allege as follows:

**PARTIES**

1. Plaintiffs Katrina and Benjamin Necaise are a married couple residing in San Marcos, California. They are citizens of the state of California.

2. Defendant General Mills, Inc. is a Delaware corporation with its principal place of business in Golden Valley, Minnesota.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4. Plaintiff seeks to represent Class members who are citizens of states or countries different from the Defendant.

5. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7. In the alternative, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including at least one Plaintiff; shipping the Products to commercial and individual consumers in this district, including at least one Plaintiff; knowingly directing advertising and marketing materials concerning the Products

into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers including Plaintiff have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiffs.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. In the alternative, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs.

13. Plaintiffs' losses and those of other Class members were sustained in this district.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

15. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

16. General Mills is a leading producer, manufacturer, marketer, and seller of cereal foods, including the iconic Cheerios brand of breakfast cereals, which is among the most famous food brands in the world.

17. Cheerios consists of pulverized oats shaped into a ring. Besides the original unflavored Cheerios, the brand has produced and sells a number of flavored Cheerios lines, including Honey Nut Cheerios.

18. Generations of children and adults internationally and in the U.S. have enjoyed Cheerios for the past 75 years, making it one of the most popular and recognizable foods brands in the world. The brand is especially popular among families, reflecting its image among consumers as a healthy, nutritious breakfast food. Cheerios are often used by parents to transition their infants to solid food, and to assist in their fine motor skills development.

19. Unfortunately for consumers, Cheerios contain dangerously high levels of chlormequat, a pesticide that has been linked to disruption of fetal growth and harm to the nervous system.

20. Specifically, independent laboratory testing has revealed that the following Cheerios products have tested positive for the presence of chlormequat: regular Cheerios, Honey Nut Cheerios, Frosted Cheerios, and Oat Crunch Oats N' Honey Cheerios. The Products have tested out at levels of between 40 to more than 100 parts per billion of chlormequat.

21. Chlormequat is a plant growth pesticide that is used to control plant size by blocking hormones that stimulate growth prior to bloom. When applied to growing oat and grain crops, it stops them from bending over, which impedes the harvesting process.

22. Chlormequat is dangerous to human health if ingested, even at very low levels. Toxicological studies suggest that exposure to chlormequat can reduce fertility and harm developing fetus at doses lower than those used by regulatory agencies to set allowable daily intake levels. Chlormequat has also been shown to delay puberty and impair the reproductive functions in mammals.

23. The packaging and labelling for Defendant's Products do not list chlormequat in the ingredient section, nor do they warn about the inclusion or potential inclusion of chlormequat in the Products

24. The Environmental Working Group ("EWG"), a nonprofit run by scientists dedicated to protecting public health, recommends a health benchmark of 30 parts per billion per day for chlormequat. The levels of chlormequat found in Cheerios far exceeds this recommended threshold amount.

25. Plaintiffs Katrina and Benjamin Necaise are a married couple with four children, all of them 13 or younger. They buy Cheerios regularly and have for many years, in reliance on the brand's image among consumers as a healthy, safe food product. The Necaises attempt to purchase only safe and healthy foods for their family and are particularly focused on avoiding foods with unnecessary chemicals and synthetic additives.

26. The Necaises purchased Honey Nut Cheerios on June 12, 2023 for $7.49 from Albertsons.com, but they have purchased other Cheerios products including regular Cheerios, at multiple times throughout the Class period.

27. Consumers including the Plaintiffs reasonably relied on the label and ingredients list of Cheerios to accurately inform them of the components and ingredients of the Products. Consumers including Plaintiffs would not have purchased the Products had their labels accurately disclosed the presence of chlormequat in Cheerios.

28. In the alternative, because of failure to disclose the presence of chlormequat in Cheerios, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

29. Consumers including Plaintiffs especially rely the labels on food products, as they cannot confirm or disprove the claims stated on those labels simply by viewing or even consuming the Products.

30. Plaintiffs and, indeed, no reasonable consumer would ever expect that a food product—especially one heavily marketed to children and families—would contain dangerous pesticides. Plaintiffs and Class Members suffered economic injuries as a result of purchasing the Products.

31. Plaintiffs suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiffs' injury.

32. All flavors of the Products are sold for similar prices, are packaged in similar packaging, are manufactured using the same base formulation, and all contain unhealthy and unsafe levels of chlormequat. Plaintiffs therefore have standing to represent the purchasers of all flavors of the Products, regardless whether they purchased each individual flavor of each Product.

**CLASS ACTION ALLEGATIONS**

33. Plaintiffs bring this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in in the state of California who purchased the Products in the four years prior to the filing of this Complaint.

34. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

35. Plaintiffs reserve the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

36. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

37. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiffs believe and aver there are thousands of Class members geographically dispersed throughout the state of California.

38. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

   b. Whether a reasonable consumer would understand Defendant's label to indicate that the Products did not contain dangerous levels of pesticides;

   c. Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class members;

   d. the proper amount of disgorgement or restitution;

   e. the proper scope of injunctive relief; and

   f. the proper amount of attorneys' fees.

39. Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate

this action. The common questions will yield common answers that will substantially advance the resolution of the case.

40. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

41. **Typicality – Rule 23(a)(3)**: Plaintiffs' claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

42. Specifically, all Class members, including Plaintiffs, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiffs seek the same relief as the Class members.

43. There are no defenses available to Defendant that are unique to the named Plaintiffs.

44. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff are fair and adequate representative of the Class because their interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

45. Furthermore, Plaintiffs has selected competent counsel who are experienced in class action and other complex litigation. Plaintiffs and Plaintiffs' counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

46. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

47. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

48. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiffs will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products although they would like to.

49. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

50. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.*

51. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

52. Plaintiffs are "consumers" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

53. The sale of Defendant's Products to Plaintiffs and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

54. The Products purchased by Plaintiffs and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

55. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material to reasonable consumers.

56. Defendant's ongoing failure to provide material facts about its Products violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

     c.   Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

     d.   Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law; and

     e.   Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

57. By reason of the foregoing, Plaintiffs and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

58. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

59. Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs intend to amend their Complaint to add a claim for damages pursuant to the CLRA not less than 30 days after commencement of this action and compliance with relevant notice requirements under Section 1782(a).

**COUNT 2**
**UNJUST ENRICHMENT UNDER CALIFORNIA LAW**

60. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and plead this cause of action if necessary in the alternative.

61. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the presence of chlormequat in the Products.

62. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

63. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

-11-
CLASS ACTION COMPLAINT

64. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

65. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

66. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

67. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF AN IMPLIED WARRANTY UNDER CALIFORNIA LAW

68. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and plead this cause of action if necessary in the alternative.

69. Plaintiffs purchased the consumer goods described herein from Defendant, who at the time was in business of manufacturing and selling consumer goods including the Products.

70. The Products were, at the time of Plaintiffs' purchase, not of the same quality as those generally acceptable in the trade; were not fit for the ordinary purposes for which the goods are used; and were not adequately labeled.

71. Plaintiffs were harmed by the purchase, as set forth herein, and Defendant's breach of the implied warranty was a substantial factor in causing Plaintiffs' harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the CLRA and/or was unjustly enriched and or breached an implied warranty;

c. Awarding actual, special, exemplary, and punitive damages to the extent permitted by law or equity;

d. Ordering disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court;

e. Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

f. Ordering Defendant to pay attorneys' fees and litigation costs;

g. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

h. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

February 23, 2024